[No. 4495–5–III.   Division Three.   August 3, 1982.]

METROPOLITAN SERVICES, INC., *Appellant*, v. THE CITY OF SPOKANE, *Respondent*.

*Leo J. Driscoll, Charles M. Andersen, Robert A. Dunn,*

and *Winston & Cashatt,* for appellant.

*James C. Sloane, Corporation Counsel,* and *Robert G. Beaumier, Jr., Assistant,* for respondent.

GREEN, J.—Metropolitan Services, Inc., appeals the dismissal of its claim against the City of Spokane for termination of a portion of its right to collect refuse under certificate G–39 issued by the Washington Utilities and Transportation Commission (WUTC). The primary issue is whether Metropolitan's claim against the City is barred by the statute of limitation.

Beginning in 1946, under a state permit, different private companies were authorized to provide garbage and refuse service to an area commonly known as Continental City adjacent to the north city limits of Spokane. By 1966 North Star Services, Inc., held the permit—certificate G–39—which encompassed the townships of Mead, Five Mile, Nine Mile and other areas, including Continental City, in Spokane County. In 1967, the City of Spokane annexed Continental City, but did not issue a formal franchise to North Star. In 1969, G–39 was reissued to North Star and expanded to include portions of Grant, Okanogan, Douglas and Lincoln Counties. In 1970, G–39 was again reissued to North Star and expanded to include additional territory in Spokane County, and in 1972, reissued expanding the territory into Stevens County.

On July 25, 1972, Metropolitan purchased all the assets of North Star, then bankrupt, and the rights under G–39 were transferred to Metropolitan. At this time G–39 covered several areas in Spokane County, including Continental City and the townships of Mead, Five Mile and Nine Mile, in addition to large portions of Grant, Okanogan, Douglas, Lincoln and Stevens Counties.

In 1975, on the basis of the holding of *Federal Way Disposal Co. v. Tacoma,* 11 Wn. App. 894, 527 P.2d 1387 (1974), realizing it should have granted North Star a 5–year franchise at the time of annexation as provided by RCW

35.13.280, the City granted Metropolitan a 5–year franchise to serve Continental City. Shortly before this franchise was to expire, Metropolitan met with the City of Spokane and was informed it did not intend to renew the franchise. Later the City notified Metropolitan to discontinue garbage and refuse collection in the Continental City area effective midnight, March 23, 1980.

On December 12, 1979, Metropolitan filed a complaint for declaratory relief and/or money damages. The City moved for summary judgment on the ground Metropolitan's claims were barred by the statute of limitation. This motion was granted and the action dismissed with prejudice. Metropolitan appeals.

Metropolitan initially contends G–39 is a vested, permanent and protected property right and, therefore, the City's termination constituted a constitutional taking requiring just compensation to Metropolitan. We disagree.

Const. art. 11, § 11 provides:

> Any county, city, town or township may make and enforce within its limits all such local police, *sanitary* and other regulations as are not in conflict with general laws.

(Italics ours.) This section constitutes a direct delegation of police power authority to municipalities. *Hass v. Kirkland,* 78 Wn.2d 929, 932, 481 P.2d 9 (1971); *Tacoma v. Vance,* 6 Wn. App. 785, 496 P.2d 534 (1972). In carrying out this constitutional mandate, the Legislature authorized cities to establish a system of garbage collection and disposal. RCW 35.21.120.[1] *See also Spokane v. Carlson,* 73 Wn.2d 76, 83, 436 P.2d 454 (1968). To facilitate the orderly exercise of this grant of police power, the Legislature in 1965 enacted

---

[1]RCW 35.21.120 provides:

"Every city and town may by ordinance provide for the establishment of a system of garbage collection and disposal for the entire city or town or for portions thereof, and award contracts for garbage collection and disposal or provide for it under the direction of officials and employees of the city or town."

RCW 35.13.280,[2] which is based on a substantially similar 1957 statute, Laws of 1957, ch. 282, § 1, p. 1120. It provides that annexation of an area by a city cancels any permit granted by the state for garbage collection. *Federal Way Disposal Co. v. Tacoma, supra* at 896.

RCW 35.13.280 also provides various methods of compensating for the cancellation of a state permit. The city can either: (1) grant an exclusive 5–year franchise to the garbage collector permitting it to continue business within the annexed area, *Federal Way Disposal Co. v. Tacoma, supra* at 896; or (2) negotiate for an immediate purchase of the franchise or permit, business or facility; or (3) acquire the franchise or permit by condemnation. RCW 35.13.280.

██ The statute further provides that anyone whose franchise or permit has been canceled by annexation and who suffers measurable damages as a result has a cause of action against the annexing city. A statute should be construed as a whole to avoid unlikely, strained or absurd consequences and to ascertain legislative intent. *Alderwood Water Dist. v. Pope & Talbot, Inc.,* 62 Wn.2d 319, 321, 382 P.2d 639 (1963); *Johnson v. Tradewell Stores, Inc.,* 24 Wn. App. 53, 600 P.2d 583 (1979), *aff'd,* 95 Wn.2d 739, 630 P.2d 441 (1981). We agree with the trial court's interpretation

---

[2]RCW 35.13.280 provides:

"The annexation by any city of any territory . . . shall cancel, *as of the effective date of such annexation,* any franchise or permit theretofore granted to any person, firm or corporation by the state of Washington, or by the governing body of such annexed territory, authorizing or otherwise permitting the operation of any . . . garbage collection and/or disposal . . . within the limits of the annexed territory, but the holder of any such franchise or permit canceled pursuant to this section shall be forthwith granted by the annexing city a franchise to continue such business within the annexed territory for a term of not less than five years from the date of issuance thereof, . . . *Provided,* That the provisions of this section shall not preclude the purchase by the annexing city of said franchise, business, or facilities at an agreed or negotiated price, or from acquiring the same by condemnation upon payment of damages, including a reasonable amount for the loss of the franchise or permit. In the event that any person, firm or corporation whose franchise or permit has been canceled by the terms of this section shall suffer any measurable damages as a result of . . . annexation . . . such person, firm or corporation shall have a right of action against any city causing such damages." (Italics ours.)

that the provision allowing an action for measurable damages would be meaningless if the granting of a 5–year franchise fully compensated the franchisee. It is evident if the city elected to either negotiate a purchase or condemn, the party whose franchise had been canceled would be adequately compensated and thus there would be no need to bring an action for measurable damages. Therefore, the franchisee who is granted a 5–year franchise after annexation has the right under the statute to seek damages for any loss sustained over and above the benefit derived from the franchise.

Here, pursuant to RCW 35.13.280, annexation of Continental City by the City of Spokane canceled G–39 as to that area. Since the City neither condemned nor purchased the franchise, business or facilities, the only remaining rights of North Star under RCW 35.13.280 were the right to a 5–year franchise, and a right of action against the City for measurable damages. Metropolitan could only acquire what North Star had at the time of purchase. While the City did not issue a formal 5–year franchise forthwith upon annexation, North Star was nevertheless permitted to continue garbage collection without interference until Metropolitan's purchase of North Star's rights in 1973. Thereafter, Metropolitan continued its service until the City in 1975 granted it a franchise that expired by its terms in 1980. The City actually permitted operation for 8 years beyond the 5 years required by statute.

The question then is whether Metropolitan has any claim for measurable damages under RCW 35.13.280 that is not barred by the statute of limitation.

Metropolitan contends its right to measurable damages is not barred by the statute of limitation or mere passage of time because a constitutional taking has occurred. *Petersen v. Port of Seattle,* 94 Wn.2d 479, 483, 618 P.2d 67 (1980). We disagree.

■ We do not find a constitutional taking here. The issuance of G–39 was at all times subject to the prior constitutional right of the City to exercise its police power and

its statutory right of annexation. Therefore, when a portion of the territory covered by G–39 was annexed in 1967, a constitutional taking did not occur. North Star's rights were established by statute.

Metropolitan argues that if the statute of limitation governs, a question of material fact exists as to when the cause of action for damages accrued. It asserts the discovery rule applies and, therefore, the statute of limitation did not begin to run until Metropolitan knew or should have known of the intent of the City to terminate its collection rights. Metropolitan claims it was not until 1978 that it learned of the City's plan not to renew the franchise. We do not find this argument persuasive.

■■ The general rule is a cause of action accrues and the statute of limitation begins to run when a party has the right to apply to the court for relief. *U.S. Oil & Ref. Co. v. Department of Ecology*, 96 Wn.2d 85, 91, 633 P.2d 1329 (1981); *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219, 543 P.2d 338 (1975); *Simms v. Allstate Ins. Co.*, 27 Wn. App. 872, 875, 621 P.2d 155 (1980). The "discovery rule" is an exception. *Kittinger v. Boeing Co.*, 21 Wn. App. 484, 487, 585 P.2d 812 (1978). Under this rule, a cause of action accrues and the statute of limitation does not begin to run until the plaintiff learns of or in the exercise of reasonable diligence should have learned of the facts which give rise to the cause of action. *U.S. Oil & Ref. Co. v. Department of Ecology, supra* at 92; *Buxton v. Perry*, 32 Wn. App. 211, 646 P.2d 779 (1982). However, the discovery rule has limited application. *Haslund v. Seattle*, 86 Wn.2d 607, 620, 547 P.2d 1221 (1976); *Kittinger v. Boeing Co., supra* at 487; *see also U.S. Oil & Ref. Co. v. Department of Ecology, supra* at 92–94. In all cases in which it has been applied, the plaintiff has lacked the means or ability to ascertain a wrong has been committed. *U.S. Oil & Ref. Co. v. Department of Ecology, supra* at 93; *Peters v. Simmons*, 87 Wn.2d

400, 405, 552 P.2d 1053 (1976); *Ruth v. Dight,* 75 Wn.2d 660, 667, 453 P.2d 631 (1969); *Kittinger v. Boeing Co., supra.*

Here, the president of Metropolitan, in his deposition, stated he was aware from discussions with city officials and from a copy of the proposed ordinance he had received, the 5–year franchise was to terminate at the end of the 5–year period. On March 26, 1975, Metropolitan signed a contract with the City which recited:

> Whereas, the City of Spokane is awarding a five (5) year franchise to Metropolitan Services, Inc., pursuant to RCW 35.13.280, allowing Metropolitan to collect refuse within the city limits in an area annexed to the City of Spokane in 1968 [*sic*] . . .

This clause not only indicates the franchise was for a 5–year period, but also cites the statute under which it was issued. With due diligence, by reading the contract and statute cited in it, Metropolitan would have become aware of its potential claims for damages against the City. Application of the discovery rule would not serve the ends of justice in this case. *U.S. Oil & Ref. Co. v. Department of Ecology, supra* at 93.

The statute of limitation for whatever period, 2 years (pursuant to RCW 4.16.130); 6 years (if franchise is treated as a contract based on *Tukwila v. Seattle,* 68 Wn.2d 611, 615, 414 P.2d 597 (1966), then RCW 4.16.040 applies); or even 10 years (if treated as an eminent domain action, *see Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 9, 548 P.2d 1085 (1976); *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 405, 348 P.2d 664, 77 A.L.R.2d 1344 (1960)), commenced to run at the time of annexation in 1967. Metropolitan's action, not having been filed until 1979, is barred.

In light of this holding, we need not consider the issues raised by the City in its cross appeal.

Affirmed.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied September 21, 1982.

Review denied by Supreme Court December 3, 1982.