**James W. WILLHITE,**
**et al., Appellants,**

v.

**CASS COUNTY BOARD OF**
**SUPERVISORS, et al.,**
**Defendants,**

**Lowell Schellack, an individual**
**doing business as Schellack**
**Engineering, Respondent.**

**No. A04–660.**

Court of Appeals of Minnesota.

Feb. 15, 2005.

Review Denied April 19, 2005.

David M. Van Sickle, St. Paul, MN, for appellants.

Steven R. Peloquin, Peloquin & Minge, P.A., New York Mills, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; LANSING, Judge; and WRIGHT, Judge.

## OPINION

LANSING, Judge.

This appeal is from a summary judgment dismissing the landowners' professional-negligence and intentional-misrepresentation claims against a surveyor who performed a survey on the landowners' property in 1997. The landowners appeal the district court's granting summary judgment and the underlying order allowing the surveyor to amend his answer to reassert a statute-of-limitations defense. We affirm the order permitting amendment of the answer, but we reverse and remand the summary-judgment dismissal because the landowners brought their action within two years of the discovery of an error in the survey of land and a genuine issue of material fact exists on whether the alleged survey error proximately caused the landowners' damages.

## FACTS

James and Bonnie Willhite purchased property on Crystal Lake in Cass County in 1980. After purchasing the property, the Willhites improved the western side of their land by completing a boat house and installing a septic drain field. The Willhites' immediate neighbors to the west, Cheryl and Donald Collins, purchased their property in 1971. In 1996 the Collinses obtained a survey to determine the boundary line between the properties. The Collinses' survey showed that the Willhites' western boundary line was located thirty feet east of where the Willhites believed it to be. The Willhites concluded that the survey was in error and retained Schellack Engineering to survey the property. Lowell Schellack performed the survey. His initial survey and two survey revisions were consistent with the Collinses' survey.

In 1997 the Willhites initiated an adverse-possession action to establish ownership of the thirty-foot strip of land that the surveys showed was part of the Collinses' property. The Willhites also attempted to obtain a resurvey of the land but were unable to find a surveyor who was willing to undertake a new survey within a reasonable time period. The district court determined that the Willhites had not exercised possession of the strip of property for a sufficient period of time to establish title by adverse possession. The Willhites appealed, and this court affirmed the district court's determination. *Willhite v. Collins*, 2000 WL 1869564 (Minn.App. Dec.26, 2000).

In April 2002, the Willhites retained Roger Mustonen to resurvey their property. In the resurvey, Mustonen determined that Schellack relied on an incorrectly relocated south quarter corner and erred in locating the true position of the north quarter corner, causing Schellack to make about a thirty-foot error in the Willhites' survey. According to Mustonen, he excavated evidence of the original south quarter corner and made measurements corroborated by global-positioning-system-survey instruments. Mustonen reestablished the south quarter corner as an "obliterated" corner and the north quarter corner as a "lost" corner and certified his survey results with the county. His resurvey, based on the original south quarter corner and the reestablished north quarter corner, placed the Willhites' western boundary line about twenty-seven feet to the west, close to the location that they originally claimed.

After unsuccessfully attempting to vacate the adverse-possession judgment, the Willhites filed a complaint alleging, among other claims, that Schellack negligently performed a survey on their property that placed the western boundary of their property approximately thirty feet east of

its true location. The Willhites further alleged a claim of intentional misrepresentation and specific economic and noneconomic damages proximately caused by the surveying error.

In his answer, Schellack denied the Willhites' allegations of negligence and intentional misrepresentation and asserted a statute-of-limitations defense. In a subsequently amended answer, Schellack failed to include the statute-of-limitations defense. Schellack moved for summary judgment and, at the hearing, moved to amend his answer to include the omitted defense. The district court granted both motions, concluding that the statute of limitations for damages based on errors in land surveys barred the Willhites' claims and that the Willhites failed to demonstrate that Schellack's actions were a substantial factor in causing their asserted damages. The Willhites appeal summary judgment and the underlying order granting leave to amend the answer.

## ISSUES

I. Did the district court abuse its discretion in granting leave to amend the answer to assert a statute-of-limitations defense?

II. Does the statute of limitations for damages based on errors in land surveys in Minnesota Statutes § 541.052 (2004) bar the landowners' negligence claim?

III. Do genuine issues of material fact exist on whether the damages were proximately caused by the alleged errors in the land survey?

## ANALYSIS

### I

■ The district court permitted Lowell Schellack to amend his answer to reassert a statute-of-limitations defense that was asserted in his original answer to the complaint but inadvertently deleted from his amended answer. The Minnesota Rules of Civil Procedure provide that leave to amend pleadings "shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. We review a district court's decision to allow amendments under an abuse-of-discretion standard. *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn.1980); *see also* Minn. R. Civ.App. P. 103.04 (providing appellate courts may review any order affecting order from which appeal is taken).

We discern no abuse of discretion in the district court's order allowing Schellack to reassert his statute-of-limitations defense. It is true, as the Willhites contend, that the motion was made orally at the hearing on the dispositive summary-judgment motion. But it is also true that the Willhites were aware of the affirmative statute-of-limitations defense when they received the first answer to their complaint. The prejudice asserted by the Willhites is that they were unable to fully develop the factual record on their efforts to locate another surveyor. Schellack does not dispute this claim but contends that the extent of the Willhites' timely efforts to obtain a resurvey is not relevant to the issues raised in this appeal. Accepting Schellack's concession, we conclude that the Willhites were not prejudiced by Schellack's failure to reassert this defense, which was originally alleged but inadvertently omitted from the amended answer to the Willhites' third amended complaint. The district court did not abuse its discretion in allowing the amendment.

### II

■ In Minnesota an action for damages based on errors in a land survey must be brought within two years after discovery of the error:

Except where fraud is involved, no action to recover damages for an error in the survey of land, nor any action for contribution or indemnity for damages sustained on account of an error, may be brought against any person performing the survey more than two years after the discovery of the error, nor in any event more than ten years after the date of the survey.

Minn.Stat. § 541.052, subd. 1 (2004).

In determining whether a statute has been correctly applied, this court looks first to its language to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (2004) (setting forth plain-meaning rule); *Kersten v. Minn. Mut. Life Ins. Co.*, 608 N.W.2d 869, 874–75 (Minn.2000). If the meaning of a statute is plain; no construction is necessary or permitted. *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn.1995). The rules of construction forbid adding words or meaning to a statute if the words were intentionally or inadvertently left out. *Id.* Construction of a statute is a legal conclusion that we review de novo. *In re Welfare of A.A.E.*, 590 N.W.2d 773, 776 (Minn. 1999).

The district court analogized the limitation of actions for damages based on errors in land surveys to the limitation on actions for damages based on services or construction to real property in Minn.Stat. § 541.051 (2004). The statute of limitations for damages to real property provides that no action may be brought "more than two years after discovery of the *injury*." Minn.Stat. § 541.051, subd. 1 (emphasis added). Relying on cases interpreting section 541.051, the district court reasoned that the statute of limitations begins to run when an actionable injury is discovered regardless of whether the precise nature of the defect causing the injury is known. Applying this analysis, the dis-trict court concluded that the Willhites are barred from bringing this action because their deposition statements established that they knew that Schellack's survey was incorrect when they received it in 1997 but failed to bring their professional-negligence action until 2002.

The Willhites do not dispute that they genuinely believed that the Schellack survey was incorrect, but they did not know that it was based on an error in negligently locating the south and north quarter corners until Mustonen discovered that error through his 2002 resurvey of the property. Without an expert opinion that Schellack's survey contained an error, which deviated from a professional-surveyor's duty of care, the Willhites had no basis on which to bring an action against Schellack.

Minnesota appellate courts have not previously interpreted our statute limiting the time to bring actions for errors in land surveys. Other jurisdictions, however, have construed statutes with substantially similar language. *See, e.g.,* 735 Ill. Comp. Stat. 5/13–222 (2003) (stating that no action may be brought against professional land surveyor more than four years after claimant "actually knows or should have known of the negligence, errors, omissions, torts, breaches of contract, or other action"); Md.Code Ann., Cts. & Jud. Proc. § 5–112 (2002) (requiring action be brought within twenty years of survey, or within three years "after the discovery of the error"); Mo.Rev.Stat. § 516.098 (2002) (providing that no action may be brought "more than five years after the discovery of the [survey] error or omission"); 42 Pa. Cons.Stat. Ann. § 5537 (2004) (mandating that action to recover damages "occurring as the result of any deficiency, defect, omission, error or miscalculation" by professional land surveyor be brought within four years of discovery of cause of action).

These courts have not equated "discovery of error" to "discovery of injury;" the decisions apply plain meaning to the word "error." *See, e.g., Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656, 664 (1969) (applying earlier version of current statute and observing that when passage of time does not increase problems of proof, justice is served by allowing plaintiff to sue when cause of action exists); *Martin v. Crowley, Wade & Milstead, Inc.,* 702 S.W.2d 57, 57–58 (Mo.1985) (determining, in action heard before enactment of governing statute, that plaintiffs claiming surveyor negligence "had no duty to double check defendant's work"). Other jurisdictions have expressed similar views. *See, e.g., Hodges v. Smith,* 517 A.2d 299, 301 (Del.Super.1986) (concluding, under the "time-of-discovery" rule, that erroneous nature of survey was "inherently unknowable" and that balance between surveyor's difficulty of proof and preclusion of plaintiffs' claim tipped in favor of allowing claim to proceed).

The Wyoming Supreme Court has held, on facts similar to those in this case, that the plaintiffs did not discover surveying errors until they received a second survey confirming those errors, even though a title-insurance agent had expressed earlier concerns about the survey results. *Bredthauer v. Christian, Spring, Seilbach & Assocs.,* 824 P.2d 560, 562–63 (Wyo.1992). The *Bredthauer* court recognized that, before the plaintiffs received the second survey, their claims would have been merely speculative, and they could not reasonably have known the cause, nature, or extent of their damages. *Id.* at 563.

Some courts have also employed a balancing test to apply the discovery rule to surveyor negligence based on alleged errors. In *Klinger v. Kightly,* 791 P.2d 868, 872 (Utah 1990), the Utah Supreme Court stated that the relevant policy consideration is that an innocent reliant party should not bear the burden of a surveyor's professional mistake; that promoting cautionary techniques of surveyors would be encouraged if a foreseeable reliant user is allowed to recover; that the passage of time does not involve the danger of a false or frivolous claim or make testimonial proof of a defense more difficult; that it is illogical to require a plaintiff to hire two or three surveyors to insure the accuracy of the first survey; and that a plaintiff may lack the means or ability to determine that a wrong has been committed. *Id.* at 871.

The Willhites' deposition statements that they knew that Schellack's survey was incorrect were based on their belief of where their boundary line should have been located. They were unable to obtain any confirmation of that belief until Mustonen, in his 2002 resurvey, discovered the errors in locating the south and north quarter corners. Before that time, their claims against Schellack were merely speculative and did not reflect a professional opinion that the survey was in error.

We do not see a basis to read "discovery of error" to mean "discovery of injury" in a limitations statute that applies to professional surveying services. To apply a discovery-of-injury standard would impose on plaintiffs the unreasonable duty of filing suit against a surveyor before verifying the accuracy of his professional opinion, which is inherently undiscoverable without a second survey. The Willhites' limited lay observations that they believed the survey was wrong did not constitute a "discovery of the error" that triggered the running of the statute of limitations under Minn.Stat. § 541.052 before they learned of the error through the resurvey. Although we are mindful of the necessity for repose and also of evidentiary problems caused by the passage of time, the statute's absolute repose period of ten years

from the time of the survey provides reasonable certainty. Additionally, the passage of time would not unfairly prejudice the defense of a surveyor because the surveyor would likely be relying on his previous records for testimonial proof of his defense.

## III

■ The district court granted summary judgment on the Willhites' negligence claim on an alternative basis: that the Willhites failed to show that their damages were caused by Schellack's survey because they did not rely on it. The district court granted summary judgment on the Willhites' intentional-misrepresentation claim for the same reason.

■ For a defendant's negligence to be the proximate cause of an injury, the plaintiff must show the defendant's conduct was a substantial factor in bringing about the injury. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995); *see also Davis v. Re-Trac Mfg. Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 39 (1967) (stating that elements of intentional misrepresentation include "proximate cause"). The Willhites, in their complaint, provided a list of injuries that resulted from the alleged error in the survey. These injuries include attorneys' fees in defending a criminal violation of building and set-back ordinances; the cost of moving their boathouse; and other economic and noneconomic damages. The basis for the dismissal was not the failure to demonstrate that they suffered these injuries but that neither the alleged negligence nor the intentional misrepresentation was a substantial factor in causing the damages.

The record contains sufficient evidence to raise a material fact issue on whether Schellack's alleged negligence or intentional misrepresentation caused the Willhites' damages. The survey, which contains an allegedly incorrect property line, left the Willhites with no alternative to their adverse-possession action, substantially affected their loss of the disputed property, resulted in legal fees, and, at minimum, required a resurvey. The evidence adequately raises genuine material issues of fact on causal damages, and summary judgment on this basis is not appropriate.

## DECISION

The district court did not abuse its discretion in allowing the surveyor to amend his answer to allege a statute-of-limitations defense. A surveyor's discovery that a previous surveyor erred in locating the property's western boundary about thirty feet east of its true location is a discovery of error in a land survey that triggers the statute of limitations in an action to recover damages for professional negligence; a layperson's belief that the survey is incorrect does not. Genuine issues of material fact preclude the district court's summary judgment on the existence of damages caused by the alleged negligence and intentional misrepresentation, and we reverse and remand.

**Affirmed in part, reversed in part, and remanded.**